United States District Court
Southern District of Texas

**ENTERED**
June 23, 2026
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| Timothy Winton Bulfinch and | § | |
| Betty Jo Mathis, | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | Civil Action H-25-3457 |
| | § | |
| Montgomery County, Texas, | § | |
| et al., | § | |
| *Defendants*. | § | |

### MEMORANDUM AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1). ECF No. 6. Pending before the court are Defendants Montgomery County and the Montgomery County Sheriff's Motion to Dismiss, ECF No. 46; Defendants Mary Phillips and Deputy Ulises Garcia's Motion to Dismiss, ECF No. 55; and Plaintiff Timothy Bulfinch's Motion for Leave to File a Sur-Reply, ECF No. 63. The court recommends that Defendants Montgomery County and the Montgomery County Sheriff's Motion to Dismiss, ECF No. 46, be **GRANTED** and that Defendants Mary Phillips and Deputy Ulises Garcia's Motion to Dismiss, ECF No. 55, be **DENIED as MOOT**. Bulfinch's Motion for Leave to File a Sur-Reply, ECF No. 63, is **DENIED as MOOT**.

### 1. Background

Timothy Bulfinch and Betty Jo Mathis (Plaintiffs) were involved in a domestic dispute with each other in June 2025. In their Third Amended Complaint, Plaintiffs bring claims under 42 U.S.C. § 1983 alleging that several of their constitutional rights were violated following the dispute. Plaintiffs allege claims against Montgomery County, the Montgomery County Sheriff in his official capacity, Deputy Ulises Garcia, and the Victim Assistance

Coordinator for the Ninth District Court in the Montgomery County District Attorney's Office (the Victim Coordinator) Mary Phillips. ECF No. 42 at 3.

Plaintiffs allege that Bulfinch called 911 "regarding an incident involving Betty Jo Mathis" on June 4, 2025. ECF No. 42 at 4. After officers arrived, Bulfinch was detained.[1] Plaintiffs allege that "[t]he articulated basis for probable cause centered on allegations that Bulfinch wiped his blood on Ms. Mathis and knocked [sic] doors in the house[.]" *Id.* at 6. Bulfinch informed Garcia, one of the responding officers, that "[Bulfinch's] phone contained [an] exculpatory video showing the end of the altercation." *Id.* at 4. Garcia refused to watch the video. *Id.* Bulfinch alleges that there was no probable cause to arrest him.

At some point while the officers were investigating the events leading to the 911 call, Mathis offered to show Garcia a specific video on her phone. ECF No. 42 at 4–5. According to Plaintiffs, "Garcia became frustrated when Ms. Mathis would not show him every video on her phone; . . . Garcia nevertheless placed his fingers on Ms. Mathis's phone and manually scrolled to the clip he wanted to see." *Id.* at 5. Plaintiffs allege that Garcia unlawfully searched Mathis's cell phone by navigating to additional videos that exceeded the scope of Mathis's consent. *Id.* at 15–17.

It appears that Mathis was subsequently arrested and charged with a crime in state court related to the events of June 4, 2025. Bulfinch says he is the "recognized victim" in Mathis's case. ECF No. 42 at 1–2, 20–21.

Plaintiffs allege that Bulfinch was denied access to Mathis's state court criminal proceedings on four separate occasions based on a "gatekeeping regime that vested discretionary admission

---

[1] It appears that Bulfinch had a stab wound, and one officer asked why Bulfinch was handcuffed when he was injured. ECF No. 42 at 5.

authority in courthouse security/bailiffs subject to permissions or vetoes communicated by DA-office personnel." ECF No. 42 at 12–14, 21–22. On June 13, 2025, Phillips, the Victim Coordinator, told Bulfinch that "although court is open, admission of the public is up to the bailiffs (including when the courtroom is full or for unspecified 'other circumstances'); if admitted, [Bulfinch] may not engage defendants." *Id.* at 11.

On June 16, 2025, a bailiff told Bulfinch that "he could not be in the courtroom, and escorted him to the gallery, stating [that Bulfinch] needed permission to enter[.]" *Id.* at 12. On June 30, 2025, a bailiff told Bulfinch that he could enter the courtroom if Mary Phillips approved. *Id.* at 12–13. Phillips did not allow Bulfinch into the courtroom, stated that she had too many other victims to handle that day, and stated that Bulfinch "supports the defendant." *Id.* On July 14, 2025, Bulfinch was not permitted to enter the courtroom and was told that someone would notify him if he was needed in court. *Id.* at 13. On July 24, 2025, Bulfinch informed the Judge's secretary that he intended to attend court that day. *Id.* at 13–14. The bailiff thereafter denied Bulfinch access to the courtroom. *Id.*

Plaintiffs also allege that Bulfinch observed approximately thirty officers near his home soon after he filed many motions in Mathis's state court criminal case. ECF No. 42 at 9–10. According to Bulfinch, two marked Sheriff's Office K-9 units positioned their vehicles to partially block the road leading to Bulfinch's home. *Id.* Plaintiffs allege that the police presence was retaliation for Bulfinch's filings and involvement in Mathis's case. *Id.* at 8–10.

The Third Amended Complaint alleges that Garcia violated Plaintiffs' Fourth Amendment rights by unlawfully searching Mathis's cell phone and by arresting Bulfinch without probable cause. ECF No. 42 at 15–19. Bulfinch also alleges that Phillips violated his First Amendment right to access state court criminal

3

proceedings and that she retaliated against him by excluding him from the courtroom when he attempted to attend hearings in Mathis's criminal case. *Id.* at 20–23. Bulfinch also asserts a § 1983 *Monell*[2] claim against Montgomery County and the Montgomery County Sheriff. *Id.* at 23–25.

### 2. *Legal Standard*

Rule 12(b)(6) authorizes the court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Generally, the court is constrained to the "four corners of the complaint" to determine whether the plaintiff has stated a claim. *Morgan v. Swanson*, 659 F.3d 359, 401 (5th Cir. 2011).

Under Rule 12(b)(6), the court determines whether the plaintiff's complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Calogero v. Shows, Cali & Walsh, L.L.P.*, 970 F.3d 576, 580 (5th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Courts accept "all well-pleaded facts as true" and "view[] them in the light most favorable to the plaintiff." *Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 177 (5th Cir. 2018) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)). "A plaintiff need only plausibly allege facts going to the ultimate elements of the claim to survive a motion to dismiss." *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 768 (5th Cir. 2019). Only statements of *fact* are to be taken as true. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

---

[2] *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978).

suffice." *Iqbal*, 556 U.S. at 678. Conclusory allegations are "disentitled . . . to the presumption of truth." *Id.* at 681.

The court liberally construes pro se pleadings. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff a chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice, unless doing so would be futile. *See Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *see also Ayers v. Johnson*, 247 F. App'x 534, 535 (5th Cir. 2007) ("[A] district court acts within its discretion when dismissing a motion to amend that is frivolous or futile.").

### 3. Analysis

Section 1983 provides redress for those who have been injured or deprived of their rights under color of state law. 42 U.S.C. § 1983; *Moody v. Farrell*, 868 F.3d 348, 351 (5th Cir. 2017). The court turns to the parties' motions.

### A. Montgomery County and the Montgomery County Sheriff

Bulfinch asserts a claim against Montgomery County and the Montgomery County Sheriff in his official capacity.[3] ECF No. 42 at 7, 23–25. It appears that the parties agree that only Bulfinch, not Mathis, brings claims against the County. *See* ECF No. 53 at 3.

Municipalities can be sued directly under § 1983, but *Monell* establishes that "the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal

---

[3] "A suit against the Sheriff in his official capacity is a suit against the County." *Bennett v. Pippin*, 74 F.3d 578, 584 (5th Cir. 1996). As such, the court refers to the County and the Sheriff together as "the County."

employees will almost never trigger liability." *Webb v. Town of Saint Joseph*, 925 F.3d 209, 214 (5th Cir. 2019).

To assert a *Monell* claim under § 1983, a plaintiff must allege (1) an official policy or custom; (2) the policymaker of that policy or custom; and (3) a constitutional violation that the policy or custom was the "moving force" behind. *Moore v. LaSalle Mgmt. Co.*, 41 F.4th 493, 509 (5th Cir. 2022); *Quiroz v. Hernandez*, 167 F.4th 254, 266 (5th Cir. 2025). There are three ways to establish the first element: (1) written policy statements, ordinances, or regulations; (2) a widespread practice that is so common and well-settled as to constitute a custom; or (3) in rare circumstances, a single decision may constitute municipal policy when the official possessing final policymaking authority performed the specific act that forms the basis of the § 1983 claim. *Webb*, 925 F.3d at 214–15.

Bulfinch alleges a policy, practice, or custom claim that is based on the county's alleged violation of the First Amendment. ECF No. 42 at 23–24. Bulfinch argues that the County unlawfully burdened his right to petition the government and barred access to criminal proceedings. *Id.* Bulfinch also appears to argue that the County retaliated against him for various protected activities. *Id.* at 9.

Bulfinch does not identify any written policy statements, ordinances, or regulations affecting the exercise of his rights. Bulfinch also does not allege that an official with final policy making authority performed the acts that form the basis of his claims. Thus, the court considers whether Bulfinch has sufficiently alleged a widespread practice or pattern to support his claims against the County.

To show that a practice is so common and widespread as to practically have the force of law, a plaintiff must do more than describe the incident that gave rise to his injury. *Johnson v. Harris Cnty.*, 83 F.4th 941, 946 (5th Cir. 2023). To be actionable, a pattern

6

"must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Davidson v. City of Stafford*, 848 F.3d 384, 396 (5th Cir. 2017), *as rev'd* (Mar. 31, 2017) (quoting *Peterson v. City of Fort Worth*, 588 F.3d 838, 850 (5th Cir. 2009)). A pattern requires similarity, specificity, and sufficiently numerous prior incidents. *Id.* A plaintiff must show a pattern of abuse that transcends an error made in a single case. *Peterson*, 588 F.3d at 850–51. "A plaintiff's description of the challenged practice 'cannot be conclusory; it must contain specific facts.'" *Johnson*, 83 F.4th at 946 (quoting *Pena v. City of Rio Grande City*, 879 F.3d 613, 621–22 (5th Cir. 2018)).

The County argues that Bulfinch did not allege an official policy or persistent widespread practice. ECF No. 46 at 8. In response, Bulfinch argues that he "need not identify the precise written policy or training directive responsible for the violation. Discovery is the mechanism through which such policies are uncovered." ECF No. 53 at 9.

Bulfinch has not met his burden. Bulfinch alleges that an unnamed bailiff (or multiple unnamed bailiffs) and the Victim Coordinator violated his right of public access on four occasions. Bulfinch alleges that courthouse bailiffs operate under the Sheriff's authority and that the Sheriff "maintained and enforced a discretionary gatekeeping practice that lacked neutral, objective, and narrowly tailored criteria[.]" ECF No. 42 at 22. Even if such acts constitute a violation of his First Amendment rights,[4] Bulfinch does not allege any facts to show that his experience rises to the level of a practice that is so common and widespread as to

---

[4] The court does not decide whether the alleged exclusions amount to constitutional violations.

7

practically have the force of law. *See Peterson*, 588 F.3d at 851–52 (finding that, even where a plaintiff identified at least four incidents where a police force violated multiple individual's constitutional rights, the incidents do not show that the municipality maintained an official policy of condoning those violations).

Bulfinch has done no more than describe the incidents that gave rise to his injury. Bulfinch did not allege any facts showing that his denial of entry into the courtroom is the expected, accepted practice of county employees, nor did he allege that any other individuals were denied access to the courtroom. *Cf. Davidson*, 848 F.3d at 396. Bulfinch also did not allege that the conduct occurred for so long or so frequently that the course of conduct warrants attribution to the County. Bulfinch's allegations relate only to his own experiences in this case. Bulfinch's conclusory assertions that such acts constitute a gatekeeping practice or scheme are speculative and insufficient. Bulfinch has not alleged an official policy or custom necessary to state his *Monell* liability claim.

To the extent that Bulfinch also alleges a claim against the County for alleged retaliatory conduct, Bulfinch has not alleged an official policy, nor has he alleged a constitutional violation behind which the policy or custom was the "moving force." Bulfinch's bare allegations that a large police presence near his home was retaliatory do not plausibly allege an official policy or practice that can be attributed to the County. Bulfinch does not allege that the police interacted with him in any way and there is nothing to show that the officers were there because of him. Bulfinch merely speculates that the police were in his neighborhood because of him. The County's Motion to Dismiss should be **GRANTED**, and Bulfinch's claims against Montgomery County and the Montgomery County Sheriff should be **DISMISSED.**

Bulfinch does not seek leave to amend the complaint as to the County. In any event, the court has already granted Plaintiffs leave to amend their claims against the County. ECF No 41 (granting Plaintiffs leave to file their Third Amended Complaint). Plaintiffs have had many opportunities to state their case against the County and granting further leave to amend as to the County would be futile. It appears that there are no facts Plaintiffs can allege to establish *Monell* liability. As such, leave to amend the claims against the County is **DENIED**.

### B. Garcia and Phillips

Garcia and Phillips argue that the claims against them should be dismissed because they are entitled to qualified immunity. ECF No. 55. In response, Plaintiffs request leave to amend and state that they can clarify facts related to "the sequence of denied access; the off-docket or special-hearing notice issue; . . . Garcia's refusal to review Plaintiff's identified video; . . . and the surrounding facts showing why the blood allegation was ambiguous rather than conclusive probable cause." ECF No. 58 at 23.

"Dismissing an action after giving the plaintiff only one opportunity to state his case is ordinarily unjustified." *Davoodi v. Austin Indep. Sch. Dist.*, 755 F.3d 307, 310 (5th Cir. 2014) (quoting *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986)). Here, Plaintiffs have not yet amended their claims after naming Garcia and Phillips as defendants. Plaintiffs state that they can provide additional facts to support their claims. Plaintiffs' response to the Motion to Dismiss also goes beyond the facts they allege in their complaint. *See, e.g.,* ECF No. 58 at 4–5 (stating that Bulfinch claimed he had been attacked). As such, Plaintiffs' request to amend their complaint is **GRANTED in part**.

Plaintiffs may amend their complaint to add or clarify factual allegations against Garcia and Phillips. Plaintiffs may not otherwise amend their complaint by adding new claims or parties. Plaintiffs may not amend their complaint with respect to the County or the Sheriff. The amended complaint must include all the relevant facts at Plaintiffs' disposal and should address all the issues that Defendants have raised in their Motion to Dismiss. The court will not consider additional facts outside the complaint that are raised in response to a motion to dismiss. Any response to a motion to dismiss shall include pinpoint citations to the facts set forth in the amended complaint. The amended complaint shall address all the deficiencies identified in Defendants' Motion to Dismiss, ECF No. 55. Further leave to amend to address deficiencies already identified will be denied. The amended complaint is due **By July 2, 2026**.

Once Plaintiffs have filed their Amended Complaint, Defendants shall either answer or move to dismiss within the time allotted by the Federal Rules of Civil Procedure.

Because the court has allowed Plaintiffs to amend their complaint, Phillips and Garcia's Motion to Dismiss, ECF No. 55, should be **DENIED as MOOT** without prejudice to refiling. However, should Plaintiffs fail to file their amended complaint by the stated deadline, the court will reinstate Defendants' Motion to Dismiss, ECF No. 55, as a live motion and take it under advisement.

Bulfinch's Motion for Leave to File a Sur-reply, ECF No. 63, is **DENIED as MOOT**.

The court also reminds the parties that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). When considering a motion to dismiss, the court must

10

limit itself to: (1) the facts in the complaint; (2) documents attached to the complaint; and (3) matters of which the court may take judicial notice. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019). "The court may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims." *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014).

If the parties ask the court to consider evidence attached to a Motion to Dismiss, the parties shall include citations informing the court (1) where the pleadings refer to the external documents and (2) how the documents are central to the Plaintiffs' claims.

Discovery is **STAYED** pending resolution of the qualified immunity issue based on the anticipated amended complaint. To be clear, the court still has the issue of qualified immunity under advisement. *Cf. Wertenbroch v. Hardeman*, No. 25-40616, 2026 WL 1583938, at *2–3 (5th Cir. June 3, 2026).

### 4. Conclusion

The court recommends that Defendants Montgomery County and the Montgomery County Sheriff's Motion to Dismiss, ECF No. 46, be **GRANTED** and that Defendants Mary Phillips and Deputy Ulises Garcia's Motion to Dismiss, ECF No. 55, be **DENIED as MOOT**. Bulfinch's Motion for Leave to File a Sur-Reply, ECF No. 63, is **DENIED as MOOT**.

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas, on June 23, 2026.

_____
Peter Bray
United States Magistrate Judge